SANDERS v. THE BRANCH BANK AT DECATUR.

1. The note of a stranger, received by the plaintiff, in satisfaction of a judgment, will, if paid, be a satisfaction, though it be of less amount than the judgment.

Writ of Error to the Chancery Court of the 30th District of the Northern Chancery Division. Before the Hon. W. W. Mason, Chancellor.

Sanders v. The Branch Bank at Decatur.

JOHN SANDERS filed his bill in the court of chancery, against the Branch of the Bank of the State of Alabama at Decatur, alledging that the bank recovered a judgment at law against him, in the circuit court of Morgan, for $2,200 debt, $47 15 interest, and $110 by way of damages, being five per cent. on the amount of a bill of exchange, on which he was sued as first indorser, which was drawn by Harvy Jemison, on Hugh Maddox & Co. of New Orleans. That he indorsed the bill for the accommodation of Jemison; that execution issued thereon against him, he being the only party sued, which came to the hands of the sheriff; that Jemison, the drawer, paid to the sheriff, Henderson, $700 on said execution, and took his receipt as sheriff, which receipt is lost, and complainant therefore cannot specifically describe it. That some short time thereafter, Jemison, the drawer, procured one Joseph Jemison to pay, and discharge the balance of the judgment, which was done by Joseph Jemison's paying to the bank $600 in cash, and giving his note in full for the residue. That notwithstanding said judgment is thus paid in full, the bank has caused execution to be issued on it, and the same levied on the lands of complainant. The bill prays a perpetual injunction of the judgment at law, and general relief.

The bank answered the bill, and admitted the recovery of the judgment on the bill of exchange as stated, and that execution issued thereon, and went into the hands of Samuel Henderson, sheriff, but denied the payment to the said Henderson of the $700; denied that Joseph Jemison paid, and discharged the residue of the judgment; but admitted that Harvy Jemison, the drawer of the bill, had a note discounted in the bank, and on the 19th February, 1840, checked in favor of said judgment $1,043 40, and at the same time the further sum of $601 71; also that he paid George W. Rice's check for $500, on account of said judgment. The answer then sets forth a calculation of interest, and the amounts paid, and claims as yet due for principal $274 22, $100 damages on the bill, and cost. George W. Rice was examined on the part of the complainant, who states, that the judgment was paid off in part, by Harvy Jemison to the sheriff of Lawrence county, and the balance was paid into bank by Joseph

Jemison, by substituting his note, for an amount equal to the balance of the judgment. That when Joseph Jemison was settling the judgment with the bank, he tendered the receipt of Henderson, the sheriff, for seven, or eight hundred dollars, given to Harvy Jemison, the drawer of the bill, for money paid on the execution upon the judgment referred to. The bank took the receipt, and put it into the hands of an attorney to proceed against the sheriff; afterwards, that the sheriff paid into bank $500, and alledged that $200 had been retained by him, and applied to other executions, then in his hands against Jemison, the drawer of the bill. This witness states, that the true amount due on said judgment, is the amount due on the sheriff's receipt. Joseph Jemison deposed, that he applied to the bank, in consequence of an agreement between Harvy Jemison and himself, to settle the debt. That he proposed to the bank, if they would receive the sheriff's receipt for $700 on this judgment, which he then had, that he would settle the balance by notes he held, and by his own note. This was agreed to, and he gave up the receipt to the bank, which was allowed as a credit, and that he settled the balance by his own note, and a note he held on one Harris, which notes have been paid. He states that he was informed, there were no damages, as they had been released by an act of the legislature, but that his settlement was in full of said debt. The statement of the clerk was taken, who made out an account, showing a balance due the bank on the bill of $274 22; this account was taken from the books of the bank.

Henderson, the sheriff, was examined, who states, that before the execution came into his hands, Harvy Jemison proposed to pay to him $700 on this debt. That he informed him he had no authority to receive it, but that he would do so, and apply some of it to other executions he had against him at the time, and the residue he would apply to the debt now in controversy. That Harvy Jemison at first objected to the application of any part of it to any other debt, than the bill of exchange, but finally consented, that he might satisfy other executions, and apply the balance to this debt. That he paid Rice, the bank attorney, $500 of this sum, and

retained $200 to pay costs, commissions, and the other executions he held against Harvy Jemison.

The deposition of Harvy Jemison was taken, but this was suppressed by the chancellor, on the ground of interest.

The case was heard, on bills, answer and proof, and the chancellor enjoined the collection of all the judgment, except $384 22, which he considered as still due, and dissolved the injunction as to this sum. This decree is assigned for error.

PETERS and L. P. WALKER, for plaintiff in error.

DARGAN, J.—The only question in this cause is, whether the judgment at law has been paid and satisfied. Rice, who was the bank attorney, states, that Joseph Jemison gave his own notes, in full of the judgment, less $700, that had been paid to Henderson the sheriff, and that he handed over to the bank the receipt of the sheriff for this sum, as received on this judgment for the bank. Joseph Jemison, in clear and distinct terms, states, that he agreed with the bank, to to give a note he held on one Harris, and his own note, for the residue of the judgment, deducting seven hundred dollars the amount of the sheriff's receipt, which he then handed over. That there was a small balance coming to him, from the proceeds of Harris's note, and his own, which the bank paid him. The sheriff, Henderson, admits that he received $700, but says, that it was agreed between Harvy Jemison and himself, that he should retain enough out of this sum to pay some other executions in his hands, and also the cost and commissions in this case—but at the time he received it, he had no execution on the judgment at law; but he does not state, that he gave Harvy Jemison a receipt for this sum.

It is very certain, from the testimony of Rice, and Joseph Jemison, that Henderson gave a receipt for $700, as paid on this case, which receipt was handed over to the bank, and accepted by it. We believe the contract between Joseph Jemison and the bank was, that the bank would accept the receipt of Henderson for $700, and his notes for the residue, in full satisfaction and discharge of the judgment. Joseph

Jemison was not the debtor, nor liable in any way to the bank, and even if the bank had agreed to accept his notes for a less amount than the judgment at law, nevertheless it would have discharged the judgment. As these terms were accepted, and the notes of Joseph Jemison substituted for the residue of the judgment, have been paid, this is a satisfaction of the judgment at law.

The decree of the chancellor is therefore reversed, and a decree will be here rendered, perpetually enjoining the judgment at law, and the plaintiffs in error will recover of the defendants their cost in this case, and the cost in the court below.